# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| **SOUTHERN UTAH WILDERNESS ALLIANCE**, *et al.*,<br><br>      **Plaintiffs,**<br><br>**vs.**<br><br>**UNITED STATES BUREAU OF LAND MANAGEMENT**, *et al.*,<br><br>      **Defendants,**<br><br>**BLUERIBBON COALITION, INC.**, *et al.*,<br><br>      **Defendant-Intervenors**. | **MEMORANDUM DECISION AND ORDER**<br><br>**Case No. 2:21-CV-91-DAK-JCB**<br><br>**Judge Dale A. Kimball**<br><br>**Magistrate Judge Jared C. Bennett** |

This matter is before the court on Plaintiffs' and Defendants' Joint Motion to Dismiss [ECF No. 52]. Intervenors have filed oppositions to Plaintiffs and Defendants' Settlement Agreement. The motion is fully briefed, and the court concludes that oral argument on the motion would not significantly aid the court in its determination of the motion. Accordingly, the court issues the following Memorandum Decision and Order based on the parties' written submissions and the facts and law relevant to the motion.

Plaintiffs and Defendants jointly move for a voluntary dismissal of this action pursuant to Federal Rule of Civil Procedure 41(a)(2) based on an executed settlement agreement between them. When a stipulation of dismissal occurs after an answer and is not signed by all the parties who have appeared, "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." Fed. R. Civ. 41(a). The primary consideration in

evaluating a request for voluntary dismissal under Rule 41(a)(2) is whether opposing parties will suffer legal prejudice. *Ohlander v.* Larson, 114 F.3d 1531, 1537 (10th Cir. 1997). In evaluating any legal prejudice to the nonmoving parties, the court should consider "the opposing party's effort and expense in preparing for trial; excessive delay and lack of diligence on the part of the movant[s]; insufficient explanation of the need for a dismissal; and the present stage of litigation." *Id.*

Plaintiffs and Defendants bring this joint motion for dismissal prior to any briefing on the merits. Therefore, the parties have not expended significant effort or incurred significant expenses at his point of the litigation. Intervenors do not claim that the request for dismissal comes too late in this action. Rather, Intervenors argue that Plaintiffs and Defendants' settlement agreement violates the John D. Dingell Jr. Conservation Management Recreation Act, disregards existing rights, violates the National Environmental Policy Act, conflicts with the BLM's underlying decision record and public disclosure obligations, violates their due process rights because they were excluded from the negotiations, is not fair and reasonable, and is against public interest

Intervenors recognize that it is well-established that an intervenor cannot veto a settlement by other parties. But in recognizing this basic principle of law, Intervenors advance several considerations the court should employ in guaranteeing that the settlement agreement is appropriate. These considerations, however, come from case law involving consent decrees. While an intervenor cannot generally veto a consent decree or settlement by other parties, a consent decree and a settlement agreement are two different things. "A consent decree is a negotiated agreement that is entered as a judgment of the court." *Sinclair Oil Corp. v.* Scherer, 7 F.3d 191, 193 (10th Cir. 1993). A consent decree "is more than just a voluntary settlement

agreement; it is also a final order that places the power and prestige of the court behind the compromise struck by the parties." *Bell v. Countrywide Bank, N.A.*, No. 2:11-CV-271-BSJ, 2012 WL 3073108, at *2 (D. Utah July 26, 2012). "Because the issuance of a consent decree places the power of the court behind the compromise struck by the parties" a court "must ensure that the agreement is not illegal, a product of collusion, or against the public interest." *United States v. State of Colo.*, 937 F.2d 505, 509 (10th Cir. 1991).

In this case, unlike a consent decree, the moving parties have not asked the court to retain jurisdiction or issue an order incorporating the terms of their settlement. The settlement agreement provides that the BLM will reconsider certain designations in the challenged 2020 Travel Management Plan, leaves the 2020 Travel Management Plan in place pending the BLM's reconsideration process, gives the BLM discretion in its review process, and requires the BLM to follow all applicable laws while engaging in its reconsideration. The settlement agreement does not obligate the BLM to reach any particular result and requires it only to conform to applicable laws in its reconsideration process. The parties are not asking the court to approve a consent decree. While the court can review the parties' request for dismissal to determine whether the dismissal is on terms that the court considers proper under Rule 41(a)(2), the parties' request does not require the court to scrutinize the settlement agreement as it would a consent decree.

Given the resolution of Plaintiffs challenge to the 2020 Travel Management Plan, the controversy raised in this action is resolved. BlueRibbon Coalition claims that it can continue to litigate after dismissal of the party who originated the action because it is an independent litigant that has suffered an injury in fact. But none of the Intervenors brought any of their own claims in this action. Rather, they intervened only to defend the challenge. In *Utility Solid Waste Activities Group v. EPA*, industry petitioners challenged certain agency actions, and

environmental groups intervened to defend those actions.  901 F.3d 414, 437-38 (D.C. Cir.

2018).  When the EPA moved to remand the challenged actions, and the industry petitioner did

not oppose remand, the environmental groups opposed it.  *Id.* at 438.  The D.C. Circuit held that

it lacked jurisdiction over agency actions no longer subject to challenge and explained that

because the environmental groups "did not challenge any of the relevant provisions as

Intervenors[,] . . . any opinion we issue regarding these provisions would be wholly advisory; it

would resolve no active case or controversy and would award no relief." *Id.*  Similarly, in this

case, Plaintiffs have agreed to dismiss their action and none of the Intervenors have challenged

the 2020 Travel Management Plan.  Moreover, there is no ongoing court involvement in the

settlement agreement as there would be with a requested consent decree.  Therefore, there is no

basis for the Intervenors to claim that they can continue in a case where there is no longer a case

or controversy.

The Intervenors also take issue with being excluded from settlement negotiations.  One

Intervenor claims that such exclusion violated its rights as an independent party to the litigation

and another claims that such exclusion violates its due process rights.  Neither party, however,

cites to any governing law requiring intervenors to be party to any or all settlement negotiations.

In fact, most cited law on this issue states that intervenors are not automatically entitled to

participate in settlement negotiations.  *See Sierra Club v. McCarthy*, No. 13-CV-3953-SI, 2015

WL 889142, at *12 (N.D. Cal. Mar. 2, 2015), *aff'd sub nom. Sierra Club v. North Dakota*, 868

F.3d 1062 (9th Cir. 2017); *WildEarth Guardians v. U.S. Forest Serv.*, 778 F. Supp.2d 1143, 1149

(D.N.M. 2011).  The First Circuit has found that excluding a party from negotiations does not

render a settlement improper, and as long as a government agency "operates in good faith, [it] is

at liberty to negotiate and settle with whomever it chooses." *Untied States v. Cannon Eng'g Corp.*, 899 F.2d 79, 93 (1st Cir. 1990).

In this case, Intervenors are frustrated that the BLM would be willing to reconsider decisions that it spent years making, but there is no assertion that the BLM did not act in good faith. The Settlement Agreement does not obligate the BLM to reach any particular result and requires it only to follow applicable laws in its process of reconsideration. These types of settlement terms do not suggest any bad faith.

Intervenors also claim that the settlement agreement violates the Dingall Act and NEPA, and conflicts with BLM's underlying decision record and public disclosure obligations. But again, all the settlement agreement provides is that the BLM will reconsider certain designations in the 2020 Travel Management Plan and apply all applicable laws in its reconsideration process. By its terms, the settlement agreement does not violate other laws or the BLM's public obligations. In fact, it mandates that they be followed. Nothing in the settlement agreement impairs Intervenor's ability to participate in the reconsideration process. Therefore, Intervenors' complaints that the settlement agreement violates other laws and the BLM's obligations are merely speculative. The Tenth Circuit has found a similar objection "anticipatory, or . . . not within the purview of the Settlement Agreement." *SUWA v. Burke*, 908 F.3d 630, 635 (10th Cir. 2018). If the BLM violates laws during the reconsideration process, Intervenors would then have a basis for a claim against it. But until such violations occur, the anticipation of such violations is merely premature speculation and not ripe for adjudication. Such speculation fails to provide a basis for attacking the settlement agreement. Intervenors fail to demonstrate that any provision of the settlement agreement violates any laws or public access obligations.

Moreover, the settlement agreement provides that the 2020 Travel Management Plan will stay in effect during the reconsideration process. Intervenors do not claim that the Plan violates any laws or BLM obligations. Intervenors joined the lawsuit to defend the Plan and the settlement agreement leaves the Plan in place. Given that the 2020 Travel Management Plan will stay in effect during the reconsideration process, Intervenors cannot demonstrate that they will suffer immediate or ongoing legal injury as a result of the settlement agreement.

The State also claims that the settlement agreement disregards valid existing R.S. 2477 rights. But such rights have not been adjudicated and cannot properly be referred to as valid existing rights until they are judicially established. The settlement agreement has no effect on the State's claimed R.S. 2477 rights in other litigation. *See SUWA v. Burke*, 908 F.3d 630, 635 & n.2 (10th Cir. 2018). The court continues to believe that the BLM need not resolve the R.S. 2477 issues before preparing travel plans. *Williams v. Bankert*, No. 2:05-CV-503-DAK, 2007 WL 3053292, at *6-7 (D. Utah Oct. 18, 2007).

Although Intervenors disagree with the BLM's decision to settle this action, they have not demonstrated any legal prejudice. The 2020 Travel Management Plan remains in effect and the settlement agreement charges the BLM with following applicable laws in its reconsideration of certain designations. The terms of the settlement agreement present a reasonable, just, and fair resolution of the parties' litigation and do not impair Intervenors' or the public's ability to participate in the reconsideration process. Moreover, the settlement agreement serves the public's interest in resolving cases through good faith settlement rather than costly and time-consuming litigation. *Trujillo v. Colorado*, 649 F.2d 823, 826 (10th Cir. 1981). The court concludes that Plaintiffs and Defendants have demonstrated that dismissal under Rule 41(a)(2) does not unfairly affect Intervenors, there is no merit in Intervenor's objections to Plaintiffs and

Defendant's joint dismissal of this action, and dismissal based on the parties' settlement

agreement is appropriate.  Accordingly, Plaintiffs' and Defendants' Joint Motion to Dismiss

[ECF No. 52] is GRANTED.

DATED this 19th day of May, 2022.


BY THE COURT:


DALE A. KIMBALL
United States District Judge